If it pleases the Court, my name is Terry Merriam, and I represent the appellant taxpayers, and I hopefully will be able to reserve seven minutes for rebuttal. We request that this Court reverse the judgment of the lower court for the reasons set forth in our brief, and since these are 16 consolidated cases, many of the issues we won't be able to get to, and hopefully they're briefed well enough. But all of the issues involved offers in compromise. In addition, we ask that this Court determine that the tax court had jurisdiction over just the decision that the partnership proceeding did not make the factual findings necessary for the imposition of 6621C tax-motivated interest. And I'd also like to note that this Court actually reviews the agency's determination for abuse of discretion. So while we talk about the tax court's opinion as well, we're actually reviewing the notice of determination issued in these cases. As I mentioned, there are 16 consolidated cases. There were 15 levies and one lien. And I would also like to note that the only way an offer of compromise can be reviewed by a court is through the collection due process method. So it's not a matter of neglecting or failing to pay. Many of these individuals have made some payments or partial, some substantial. But this is the only way they can get a review of that offer in compromise. And they were requesting in these collection due process appeals the collection alternative of an offer in compromise. Can I just ask sometime, maybe I should ask the government. The government suggests, I think, that they can renew an offer, that there are second bites, second chances. Is that? It's potentially true, but not necessarily practically true. First of all, the second bite is not reviewable by a court. It's absolutely not in that way. And that's very important. Secondly, oftentimes, if you submit a second offer in compromise to the offer unit, they'll deny it based upon it being the same offer. And so it has to be very substantially different. So there's a lot of practical problems with that statement that the government counsel would be aware of. They also suggest that if there are true hardships, you know, if somebody's going to be thrown out on the street, that all we are deciding at this point is that there's an authority to levy. But on the levy, at the levy stage, there's still a defense that the tax market there might have. Is that probably right or wrong? In the context of levying a house, seizing a house, the IRS does have to go to district court for permission. But that is the only context. After that, it's all an internal decision. And, you know, this is supposed to be the bite at the apple of whether or not there's a hardship. No, I wasn't trying to duck our responsibility. I just was curious about the end game. I'd like to point out that we have both what we call effective tax administration offers using the IRS terminology. And there were five of those. And what those are is the taxpayer says we can fully pay the liability, but for certain reasons, and in this case equitable reasons, we believe we shouldn't or shouldn't have to. And there was an offer made to pay all of the tax liability and interest until April 15, 1993. Secondly, there are the data's collectability offers with special circumstances. Now, that's a very important point that we need to make because there's what we call data's collectability offers, which is the old standard before ETA offers came into play, effective tax administration offers. And then you have some people who can't pay the full liability, but they have some equitable consideration as well and some additional hardships. And those are the special circumstance offers. The remainders of these offers were all data's to collectability special circumstance offer. The reason why this is extremely important is that a data's to collectability offer is a pure financial statement analysis. It usually involves looking at 48 months, both income in the future, expenses in the future, and let's say that analysis indicates that you have $25,000 to pay the tax, that the tax liability is $100,000, you pay $25,000. Pure financial analysis. And that's what they talk about in terms of reasonable collectability collection potential. And I would note that in the answering brief, that item is actually defined on page 32, the second footnote. And data's to collectability is actually discussed quite well in the answering brief in pages 31 to 34. The reason why I mention that they are separated and discussed and defined is later when you get to the data's to collectability special circumstances offers. There's not a discussion of the special circumstances. The medical, increased medical expenses. They're retired. They have a retirement account. They have a life expectancy of 14 years. How are they going to live if the government takes the retirement account? That's the special circumstance. Instead, both in the notices of determination and in the brief, there's a discussion of reasonable collection potential. And that's not the offer that was made. The offer assumes they're offering less than reasonable collection potential based upon the special circumstance element. When we were at trial, questions were asked of the appeals officer. We also called him a settlement officer in these cases. About what was the difference in the analysis? For example, we have Mr. Ernst. He's retired. He has a retirement account. We believe he needs more than what a four-year analysis would give you. And what is the difference between the two analysis? And the appeals officer was unable to show us any difference. In other words, even if the taxpayer was retired, the financial analysis was the same as the if they as if it would have been if they were 30 and healthy. Coming back to my earlier question, I think you're in this area. Andrews, for example, his wife died, as I understand it, and he supposedly incurred $470,000 in medical costs. Correct. What we have before us predates all that. Correct. So in Andrews' case, what would be the relief, assuming we didn't agree with the assessment made as of that time? We don't buy your argument that they made a mistake at that time. Is there any opportunity to reopen on that? Did they take into account the changed circumstances? How does that work? Once again, there's no court review. An offer in compromise could be submitted. There's no following the same rules, the same manual, and a lot of the same analysis that you see in front of the court. In other words, the IRS appears to have difficulty separating special circumstances and even providing guidance for how to deal with these special circumstances. So could an offer be submitted? Certainly it would be to the IRS offer unit, and there would be no review of that determination. The ETA, these offers don't provide, the notice of determination does not provide the underlying analysis that's required for this court or the tax court to review what happened. Why did these special circumstances not matter? That analysis is missing in the notice of determination. It just discusses the numbers. And remember, there's a concession that we are making an offer lower than those numbers, and that needed to be discussed. Why Mr. Ertz being retired didn't change the numbers, or Mr. Andrews, Mrs. Andrews being quite ill. Unfortunately, since we do have a number of taxpayers in this case, I know most of them, but I have to be very careful that I don't misspeak, and I might have to double check or come back and apologize. The ETA offers, they did not contain an analysis of, we asked for effective tax administration based upon the delays due to the IRS delays, the criminal investigation. Now we have a determination that the IRS should have known of the conflict of interest and not relied on the statute extensions. We asked for those to be considered, and those were not discussed in the notice of determination or in any effective manner the brief before the court. And those issues, they're set out in the brief much better. Those issues, of course, include the, he's convicted of fraud and the criminal investigations. What we find in the notices of determination that you're reviewing is the rule and a conclusion, and that's not reviewable. That doesn't give you sufficient information. You need the analysis why they came to that particular point. There's also no guidance on some of these. What the notice of determination indicates that the future expenses are speculative. Well, frankly, you know, next month's are, I guess, perhaps speculative, but it's allowed for the first 48. We extended those types of expenses and, you know, that you would expect of the types of items that are allowed in the manual, but those, anything that was extended past that 48 months, those were determined to be speculative. But there's no guidance in the manual on how we are, how we're supposed to do that, if indeed it can go on. How do we do this when we have a taxpayer who's retired and we believe have these special circumstances? We caution, there's terminology about current hardship used in the brief versus future speculation. Current hardship brings to mind the doubt as to collectability offer, which is not the offer these taxpayers made. They made one that had special circumstances, and most of them it had something to do with the fact that they were retired. There's actually a treasury example referenced in our brief where we, that discusses the needs of a retired individual, and that wasn't analyzed on why that didn't apply and why the needs past that 48 months shouldn't be considered. After reading the brief a number of times, Commissioner's brief, I was perplexed upon the guidelines with which we don't comply, that there are guidelines, these partners don't comply, so therefore they lose. And it seemed once again, you know, guideline conclusion without any analysis. Looking a little bit harder, it looks as if one of the basis for that is the fact that they believe it will undermine public confidence if it would have timely paid, timely and fully paid the obligations. Well first of all, that's not in the notice of determination, and secondly, it's simply factually not true. These Hoyt partners paid more to Hoyt than they got in tax benefits, and he kept it. They're going to have to pay back the tax benefits, and the offer, the full pay offer is plus 10 years of interest. That is not putting them in a better situation by any means. There's also a TEFRA, an example in the manual that both briefs discuss quite thoroughly, and the manual is what we call a TEFRA example, and it discusses basically, it can't just, you can't just be complaining about the facts of TEFRA, of delaying this case, and therefore we failed, or these partners failed that guideline because they were complaining about TEFRA. But that's not what these proposals asked about, or asked the IRS to look into. Not only, these clients are attempting to take responsibility to the extent that they can. It varies depending upon what they're financially capable of. But paying, you know, they've lost the money to Hoyt, paying all of the taxes, the 10-year rule isn't a 10-year rule, it's a computation. We had to come up with a calculation to make an offer. And it turns out that it's a 14-year rule, that, you know, after 14 years, that that's where the interest component would stop. The TEFRA, the case was replete with as much as we could find of what happened at the IRS. Why did these cases go on so long? But nowhere in these briefs do you see the IRS taking responsibility for its part. You see them talking about the Hoyt partners just claiming they're victims, they don't want to take responsibility. I submit they are taking responsibility. They will not be in a financially better place. But the offers were about other delays, not just Hoyt. It did include Hoyt's fraud. It did include the fact that he was convicted of defrauding them. But it certainly wasn't about how long TEFRA was. And to say that that's the argument is definitely understating the argument. And once again, that information is missing. The analysis of the differences in the Hoyt case from that example is missing from the notices of determination. So you can't figure out which – where would it stop? You know, what – how different do you have to be for that not to apply? But, counsel, something that occurs to me, we have a very fine mediation service. If the government were to agree that these be referred to mediation, would that be something that you would find helpful? Absolutely. If we could find any way to resolve these cases in a manner that would be efficient for all parties. I'm going to reserve the rest of my time for rebuttal. Go ahead. Anthony Sheehan for the Commissioner of Internal Revenue. Would you like to address my question? Yes. I was going to address that first off. As an official policy, I mean, if the court is going to take a case like this seriously, given the nature of these cases, I don't hold up – hold out much hope knowing my chain of command. I don't have personal – Stick with your chain of command. When I was Associate Attorney General, I was charged with enforcing President Clinton's then-executive order on an alternative dispute resolution. So I was the Associate Attorney General. The new Associate Attorney General, if he's going to extend the ADR component of DOJ, still is practicing or promoting ADR. I'm not saying you have to do this, but you may want to check it out and just see whether the attitudes might have changed. I think you – you're from DOJ, right? Right. I am, yes. Tax Division. So your chain of command will be up through the Associates. So you may want to check. David Ogden was involved in it. Eric Holder. You've got new – Right. Please check it out. Okay. If the Court wishes to order it, of course, we will all participate. Sometimes what we do is to give the parties a period to respond to us as to whether they're willing to go to mediation in a cooperative way. Okay. I understood you. You said you would be willing to do it. Yes, I mean – And you were going to say, but you can't, in fact, represent that there will be a great chance of success. Right. I mean – Fair summary. That's a fair summary, at least in terms of if the purpose of the mediation is to, say, IRS accept the offers that are currently on the table. But – Just to be sure you understand, mediation doesn't – we don't order. Right. We invite, as Judge Fletcher said, and mediation is an opportunity for both sides. We aren't going to – nobody on our court is going to dictate through a mediation process the outcome. Well, I will check with my chain of command, and I understand – I will tell them the Court has asked that we would consider this. If I've misstated that, please correct me. Oh, no. That's fine. Okay. Let me just write that down, too. At the end of a long day, I want to make sure I've got a written record. Okay. I don't – I'm sorry to be wasting everybody's time, but I understood you to say that you would do it. Yeah. I mean, I was saying – All you were saying was, but I can't guarantee success. If you would, there's no reason to go through this chain of command thing. I mean, if you're going to – Well, the official policy of the Department of Justice, of course, is to – would The Court says, let's do it, and we'll do it, of course. I'm just saying that I'm not holding out much hope that we would accept, at least not if we're dealing with the offers here. But whatever the Court wishes, we will comply. We'll see what the panel wants to say about it. Okay. Thank you. These cases actually present a very narrow issue. It's whether the settlement officers have used their discretion when they evaluated the taxpayers' offers against guidelines promulgated by the agency itself and rejected those offers because they did not comply with the guidelines. Now, many times the – Ms. Miriam has said that not enough analysis was done. I'd just like to note that whenever that was raised in the tax court, the tax court in all of the opinions where it was raised said, indeed, it did have enough information for its analysis. But here we really don't have – we're not here really to discuss that Hoyt was bad or the IRS was a bad agency or anything like that. But we – really the burden is on the taxpayers to show that their specific offers, the offers they actually made, did fit within the guidelines promulgated by the agency and were acceptable there. And before I go on, I may note to follow up on your question, I did actually think about it and ask chief counsel back in Washington before coming out here. Taxpayer – under 6330D appeals does retain jurisdiction in the levy cases. And even then, if there's a material change in circumstances, the taxpayer can submit a new settlement offer. There is no judicial review, but these – what we're dealing with here really are snapshots from 2004, 2005, and things change. And if the taxpayers can show a material change in circumstances, they can make a new offer, at least administratively. We really divide their offers into two categories. One I refer to in the brief as the standard offer, which possibly to oversimplify, but in 16 cases we have to. These are the people who can afford to pay in full. And they were offering that they would pay their Hoyt taxes plus interest until April 15, 1993, no penalties and no other interest beyond that. So Mr. Keller, for example, who didn't get into Hoyt until, well, tax year 94, but he didn't actually join until 95, would not pay any interest at all. That's really the offer that's on the table. And there's simply no basis for an appeals officer, you know, in the IRS to effect such a fundamental change in tax enforcement policy that 10 years into a shelter, interest stops and penalties get waived. That's the kind of thing, that kind of fundamental change has to come from Congress. So you could talk about longstanding cases, which I might add this court in Fargo said was discretionary and only in the legislative history. But to say that the IRS has to stop charging interest at 10 years when Congress has said charge interest and put in a very specific statute, 6404, for waiving interest, to say that all penalties must end no matter what at the 10th anniversary when Congress has very carefully crafted penalty provisions and exceptions to them, that's not the kind of thing an appeals officer can do, probably not even something the agency can do. And it was not an abuse of discretion to reject those offers. Indeed, if you look at the timing of these cases, it kind of tracks with Fargo fairly closely. Indeed, IRS lost the Bales case, started auditing, got notices of deficiency and later FPAWS, Partnership Notices of Deficiency, out, lost Bales, unfortunately. Then that was in 89. We had to fight with Hoyt to get the right to count the cows. We finished the cattle count in 93. At that point, we sent out prefiling letters. We started freezing refunds. And in December of 93, we sent out a letter to the partners saying, they're phantom cows, things are overvalued, watch out. This is 1993. We also sent out FPAWS. That's where we get into the six-year rule for River City Ranchers. But the cases were not tried in the tax court until 96, 97. We didn't actually win on the merits until River City Ranchers 4 in 99 and Durham Farms in 2000. If you look at that timeline, look at the Fargo timeline, it's pretty comparable. The second category of offers, and this would be about 11 taxpayers, are the hardship offers, where they're saying that there should be a collection of less than the reasonable collection potential because of hardship. Again, like I said before, this is a snapshot at a particular point in time. And the point, you know, the issue here is not looking at the burden is on the taxpayer to show that this is the most they could pay without incurring hardship. It's not to say that the appeals officer maybe made a mistake or that, you know, because if you correct the mistake and you still get a collection potential above hardship level, the offer can still be rejected. Now, there's a lot of detailed analysis of this in the tax court opinions, far more than we can put in a single brief. I would refer the court to that. And if there's still an issue, the party's trial briefs also go into great detail on each individual person's finances. I know the court normally doesn't like to look at briefs filed in the trial level. I'm just pointing that out as a resource. And in each of these cases, I believe we've shown maybe briefly in a paragraph apiece in our brief that, for example, that if the taxpayer owes $200,000, has a retirement count of $100,000, and offers $10,000, they have to show that the $10,000 is the most that they can do without incurring hardship. And I think we've demonstrated that's not the case. Also, the taxpayer has to substantiate when they're claiming expenses. For example, I believe it was Mr. Ertz, although I could be wrong, was one of them who said, my house needs $44,000 of repairs. Come out to my house and take a look, appeals officer. It's not the job of appeals officers to make field trips. If you want to claim medical expenses, which are certainly a legitimate thing you can claim, it's got to be more, as Fargo pointed out, than saying somebody's getting old, they're getting sick. We need things like what conditions do they have, what kind of insurance coverage do they have, how much is going to come out of pocket. We can't just speculate. Moving on to the next issue, the parties do agree that the tax court did have jurisdiction over the 6621C tax-motivated interest, at least to a limited extent. A tricky issue here, this case kind of fell through the cracks, because at the beginning in the Shorthorn Genetic Engineering case, the tax court thought it did not have a jurisdiction at the partnership level and didn't look at it. And then this court in River City Branches 1 said, yes, you do. Then we come back to a partnership level case. So if the tax court has jurisdiction to decide liability for the penalty, how do they do it? How does the tax court do that? It looks to the record of the tax court partnership level proceeding. Is that right? The partnership level proceeding is the Shorthorn Genetic Engineering 82-2. The tax court did not make any specific findings in that. I understand that. I understand that. So my question was, does the tax court then look to the record in the partnership level proceeding and make its own determination that there was overvaluation or that there was a jam? That is where the parties disagree. I believe that partnerships or the taxpayer's position is that if it's not in the opinion, it doesn't count. Ms. Miriam can correct me if I misstated her position, and I apologize in advance if I did. Government's position is that the tax court does have a very limited ability to look back at the record, to look at the dispositive documents, the opinion and the decision, anything adopted in there. For example, in SG 82-2, the court incorporated in its opinion the stipulation of facts in the exhibits or other documents that are necessary to the decision. That's where I don't understand your position. I'm just trying to understand it now rather than trying to agree or disagree. I understand what the disposition would be, and I understand what exhibits or stipulations or something that's part of the record would be. You say and other documents, and I don't understand what that means. In this case the inventory. Is the inventory part of the record in the tax court partnership level proceeding? The inventory, cattle inventory, was not made part of the record in the prior proceeding. However, the parties in this case stipulated that it was the document that IRS used to come up with the numbers in the decision documents, to come up with the figures that wound up in the decision documents that followed after Shorthorn generated. Is that in the record? That would be, I believe it's ER Excerpts of Record 9, page 218. Okay. Now, that may or may not matter. Let me ask you this. If I understand it correctly, if you look at the settlement agreement, which was part of the record in the tax proceeding, and you look at what the tax court actually did, the tax court adjusted the partnership's claimed value of, I think it was $4.7 million, to $480,000. Well, what happened was that... It did that, yes? Yes, it did. In the end, that's what it did. In the end, it did that. So is that sufficient to conclude that there was necessarily an overvaluation? I would say, I have to come around about it this way. The Memorandum of Understanding, the settlement agreement, did the following. It said all heifers are going to be worth $4,000. Right. It also said there will be a formula for allocating the animals that exist among the partnerships. And the formula is the extant animals in the year in the numerator and the claimed animals in the denominator. And so this cattle inventory was used by IRS, and it was stipulated that that was the document they used to come up with the new numbers. And it shows that for the partnership we're dealing with here, instead of having 520 animals worth $9,000 apiece, we had 120 worth $4,000 apiece. In this case... I mean, I understand how you get that math. But I still go back to the core question. The tax court in the partnership level proceeding determined that there was almost $1 million worth of overvaluation. Is there any need to go further than that? I would say that in the way that we've done this case, we need to know why the value was cut down to fit it into 6618. Okay. The tax court determination at the partnership level was not appealed. Right. So everybody can take it as true that there was an overvaluation at the partnership level of $4 million, $3.6 or something like that, right? Right. Well, we know that there was an overvaluation of the existing animals and that there was a factual sham to the extent we know that, what, 400 animals did not exist. And those both fit within categories of 6621C. But inasmuch as that there are other reasons why we could have come up with the numbers, this establishes that we did come up with the numbers in a way that fits within the categories of 6621C. Okay. So the last issue, touch on briefly, I believe it's the Eighth Circuit in Robinette and the 11th Circuit, but two other courts of appeals have adopted the record rule that the record in a CPP proceeding coming up to the tax court and up to the court of appeals is limited to what was presented to the appeals officer. The taxpayer does have the duty to present their documents. They can't say here's our documents and please go take a look at all the IRS files in the back room and those come in. That doesn't work. And we would ask the court in this case to adopt the record rule, which has been adopted already by two other circuits. Okay. Thank you. Thank you, Mr. Sheehan. Karen, would you like to answer the question I just asked Mr. Sheehan? About the record? Well, you know, that the tax court at the partnership level adjusted the partnership's claimed value of cattle from $4.7 million down to $480,000. So why isn't that a determination of overvaluation? Because there are multiple partnerships and we need to know how many cows in each partnership. What was the partnership determination in this proceeding? Partnership determination for actually it was the MOU, the Memorandum of Understanding, and there were numerous, I'd have to check, maybe 80 partnerships involved, and I apologize if I'm overstating. And so you have to know how many cattle in each partnership. And that is missing. And it's our position, it's the record, not just the opinion, but it is the record at the partnership level. Our position is that the tax court can look at the record to see if the factual findings have been made, not to make new factual findings. And here the tax court determines that it cannot fairly be input. You want it to make new fact findings. Pardon? Presumably you want it to make new fact findings, because otherwise you've got the penalty imposed, right? I mean, the penalty is imposed. No, we don't want them to make new fact findings, that there were insufficient facts in the partnership record to impose the penalty. The tax court in Ernst, and that's at ER 1459, determined that the orders and decisions cannot fairly be interpreted as making findings or determinations regarding whether or not DGE 85-85 transactions were tax motivated. There are insufficient. It's key, this document, this spreadsheet, is key to determining whether there's an overvaluation, because it's a calculation, and that's a component of the calculation that's missing. There was a stipulation in the Ernst case about the document, and we did intentionally withhold hearsay or not withhold hearsay. We agreed. There's no hearsay objection pending on that one. But we agreed it was the IRS's position. That's all it is. In fact, in the IRS's brief, they indicate there was no agreement by IRS or Hoyt. That's in the answering brief, pages 74 to 75. It's critical to the calculation. Without that document, you cannot determine overvaluation. Without that document, the tax motivated doesn't apply. So the factual finding is necessary. This is applied not at the partnership level. It's applied at a computational adjustment, and there was no opportunity to be heard, which is why we're even discussing were there fact findings at the partnership level. So a few other comments, if I may. The reason for it, granted, Mr. Keller perhaps wasn't paying interest due to his 1995 investment date, but we were trying to come up with a consistent number based upon the IRS delays. There was no discussion about the number. We came up with a calculation as best we could, and there was no discussion. So perhaps if penalties should be applied or if it should be different for somebody like Mr. Keller, discussion could occur. But no discussion happened. All that happened was a notice of determination. We're not asking for a 10-year rule. The calculation here was, it turns out to be 14 years in the Hoyt case with the Hoyt facts, with a criminal conviction. Now we have the statute extensions that shouldn't have been relied upon. We have Hoyt's determination of fraud. So all of those facts come into play. There is no 10-year rule. It was the calculation. You needed to make a calculation to make an offer. If there's anything else, I see my time's up. Any questions? Anything? Okay. Thank you, counsel, both of you for your argument in this case and all of them. I'm sure it's been an exhilarating morning for everybody. We appreciate the help. And the matter just argued will be submitted. The court will stand in recess for the day. Thank you all.
judges: Fletcher, Rymer, Fisher